## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:11-cv-146-JLK

RIGHTHAVEN LLC, a Nevada limited-liability company,

       Plaintiff,

v.

TRIPSO, INC., a Delaware corporation, CONSUMERTRAVELER.COM, and CHARLES LEOCHA, an individual,

       Defendants.

---

## PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH CERTIFICATE OF SERVICE

---

Righthaven LLC ("Righthaven") hereby opposes Defendants Tripso, Inc.'s ("Tripso") and Charles Leocha's ("Leocha" and collectively referred to herein with Tripso as "Defendants") Motion to Dismiss Complaint For Lack of Personal Jurisdiction, which is brought pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion", Doc. # 16-17).

Righthaven's opposition is supported by the declaration of Sara Glines (the "Glines Decl."), who serves as the Vice President of Field Operations for MediaNews Group, and the declaration of Steven G. Ganim, Esq. (the "Ganim Decl."), who serves as in-house counsel for the company, and the declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), who serves as outside counsel of record in this action.

As argued below, Righthaven asserts the Court can properly exercise specific personal jurisdiction over the Defendants. Defendants' Motion should be denied upon such a finding. Alternatively, to the extent the Court is inclined to grant the Motion, Righthaven requests an opportunity to conduct jurisdictional discovery given the factual assertions contained in

Defendants' accompanying affidavits (Doc. # 17-1).  Righthaven believes the record before the

Court, however, clearly demonstrates that specific personal jurisdiction can be exercised over the

Defendants without the need for jurisdictional discovery.

    **I.**      **STATEMENT OF FACTS.**

      On January 21, 2011, Righthaven filed this action for copyright infringement based on

the unauthorized display of a photograph entitled, "TSA Agent performs enhanced pat-downs"

(the "Work").  (Doc. # 1 at 3; Ganim Decl. ¶¶ 3-5.) The Work depicts a Transportation Safety

Administration Agent performing a "pat-down" search of a traveler in a Denver, Colorado

airport. (*Id.* at 3; Ganim Decl. ¶ 3; Glines Decl. ¶¶ 3-6.)  No other geographic location is

associated with the Work. (Doc. # 1 at 3; Glines Decl.  ¶ 5.) *The Denver Post* originally

published the Work on or about November 18, 2010. (*Id.* at 3, 5; Ganim Decl. ¶ 4; Glines Decl.

¶ 6.)  All rights, title and interest in and to the Work were assigned to Righthaven on or about

December 1, 2010.  (Ganim Decl. ¶ 7; Glines Decl. ¶ 9.)  On December 8, 2010, Righthaven was

granted registration in and to the Work by the United States Copyright Office. (Doc. # 1 at 5, Ex.

3; Ganim Decl. ¶ 7.)

      The Work's association with the forum state and Righthaven's enforcement of same

against, among other defendants, The Drudge Report, gained national notoriety in the media.  On

November 21, 2010, the Work appeared on MSNBC's website, which specifically attributed the

locale of the incident photographically captured as having occurred at the Denver International

Airport.  (Mangano Decl. Ex. 9.)  On December 9, 2010, the *Las Vegas Sun* reported on

Righthaven's copyright enforcement efforts against the Drudge Report over the alleged

unauthorized replication of the Work.  (*Id.* Ex. 5.)  On December 10, 2010, Forbes Magazine's

website featured an article concerning Righthaven's enforcement efforts against The Drudge

Report over the unauthorized display of the Work.  (*Id.* Ex. 2.)   Additional examples of media

coverage on or about December 10, 2010 that discussed Righthaven's copyright enforcement

efforts related to the Work include reports published on such websites as paidContent.org, the

Liberty Flame, the Daily Tea Party website, and the United Kingdom entity The Register. (Mangano Decl. Exs. 5, 6-8.)  All of this media coverage concerning Righthaven's copyright enforcement efforts related to the unauthorized replication of the Work, which is by no means an exhaustive representation, occurred well before Righthaven filed this action against Defendants. Moreover, media sources either attributed the Work to an event occurring within this forum state (*Id.* Ex. 9) or specifically reported on enforcement efforts related to the Work at a time period that virtually coincides with Defendants' alleged infringement at issue in this case.

Specifically, Righthaven alleges that on or about December 1, 2010, Leocha posted an unauthorized copy of the Work on the Internet website <ConsumerTravelerest.com> (the "Website"). (Doc. # 1 at 3, Ex. 2; Ganim Decl. ¶¶ 5, 8.)  ConsumerTraveler.com is alleged to be the self-proclaimed owner of all copyrighted works appearing on the Website, but Defendants admit that no such legal entity exists.  (Doc. # 1 at 2; Doc. # 17 at 1 n.1.)  Leocha admits that he is the owner and sole shareholder of Tripso, which has been identified as the current registrar of the Website.  (*Id.*; Doc. # 17-1 at 2.)  Leocha has been identified as the administrative and technical contact for the Website.  (Doc. # 1 at 3; Ganim Decl. ¶ 6.)  Leocha also admits that he is posted the Work to the Website, but contends that he obtained the copy used to do so from a third party website.  (Doc. # 17-1 at 3-4.)  Righthaven asserts that Defendants' copyright infringement was willfully committed.  (Doc. # 1 at 4, 6.)  Righthaven's Complaint in this action seeks an award of statutory damages and other relief should it prevail following a jury trial in this action. (*Id.* at 7-8.)

On April 5, 2011, Defendants were granted an extension of time to respond to the Complaint based on Righthaven's agreement not to oppose their motion requesting such relief. (Doc. # 13.)  On April 25, 2011, Defendants filed the Motion, which seeks to dismiss Righthaven's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2).  (Doc. # 16, 17.)  The Motion was Defendants' first appearance in this action.  (*Id.*) Defendants filed a

supporting affidavit along with the Motion.  (Doc. # 17-1.)  Given that this case is at its inception, the parties have conducted no discovery.

As set forth below, Righthaven respectfully requests the Court deny the Motion through a finding that it can properly exercise personal jurisdiction over the Defendants.  Alternatively, Righthaven asks the Court for permission to conduct jurisdiction discovery in the event it is inclined to grant the Motion based on the record before it.

## II.      STANDARDS GOVERNING DEFENDANTS' MOTION.

### A.      Rule 12(b)(2) Standards.

Procedurally, Rule 12(b)(2) authorizes dismissal of actions in which the district court lacks personal jurisdiction over a party.  The plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction where the issue is "raised early on in the litigation . . ." and is based on the pleadings, attachments and submissions, such as declarations or affidavits.  *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011); *accord Benton v. Cameco Corp.,* 375 F.3d 1070, 1074 (10th Cir. 2004).  In meeting this *prima facie* burden, the plaintiff need only adduce evidentiary facts that support its jurisdictional claim.  *Regional Airline Mgmt. Sys., Inc. v. Airports USA, Inc.,* 2007 WL 1059012, at *3 (D. Colo. Apr. 4, 2007).  All well pled facts asserted in the complaint must be taken as true to the extent they are uncontroverted or otherwise not deemed conclusory.  *Wentz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995); *Ten Mile Indus. Park v. W. Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir. 1987).  If there are conflicting sworn statements or evidence presented, all factual disputes shall "be construed in a light most favorable to the plaintiff."  *Doe v. National Med. Servs.,* 074 F.2d 143, 145 (10th Cir. 1992).  The Court must determine the merits of Defendants' claim that personal jurisdiction cannot be exercised over them in view of the foregoing standards.

Substantively, personal jurisdiction over a non-resident defendant is determined under a two-part test: (1) there must be personal jurisdiction under the long-arm statute of the state where jurisdiction is being asserted; and (2) the exercise of personal jurisdiction must comply with due

process. *See National Bus. Brokers, Ltd., v. Jim Williamson Prods., Inc.,* 115 F. Supp.2d 1250, 1253 (D. Colo. 2000); *Allison v. Wise,* 621 F.Supp.2d 1114, 1117 (D. Colo. 2007).

The personal jurisdiction analysis under the first part of the two-part test is collapsed into the due process analysis in this jurisdiction because Colorado's long-arm statute, C.R.S. §13-1-124, extends to constitutional limits of due process. *See Wise v. Lindamon,* 89 F.Supp.2d 1187, 1189 (D. Colo. 1999). Thus, the Court's Rule 12(b)(2) analysis should be focused on whether personal jurisdiction can be asserted over the Defendants consistent with the Due Process Clause of the Fourteenth Amendment.

The exercise of personal jurisdiction is constitutionally proper where there are continuous and systematic contacts with the forum state (general jurisdiction) or where there are sufficient minimum contacts with the forum state such that the assertion of personal jurisdiction does not offend the traditional notions of fair play and substantial justice (specific jurisdiction). *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir. 1996). The allegations of a complaint must be taken as true for purposes of performing a personal jurisdiction analysis under Rule 12(b)(2). *Behagen v. Amateur Basketball Assoc.*, 744 F.2d 731, 733 (10th Cir. 1984).

Application of the foregoing procedural and substantive standards demonstrates that personal jurisdiction can properly be exercised over the Defendants. Accordingly, the Motion must be denied.

## B.     Jurisdictional Discovery Standards.

Given the factually intensive nature of a personal jurisdiction analysis, "either party should be allowed discovery on the factual issues raised . . . " by a Rule 12(b)(2) motion to dismiss. *Sizova v. National Inst. of Standards & Tech.,* 282 F.3d 1320, 1326 (10th Cir. 2002)(internal quotation omitted); *accord Health Grades, Inc. v. Decatur Mem'l Hosp.,* 190 Fed.Appx. 586, 589 (10th Cir. 2006). While the district court is granted broad discretion in determining the propriety of jurisdictional discovery, a refusal to grant discovery constitutes an

abuse of discretion if either the pertinent facts are controverted or if a more satisfactory showing of the facts is necessary. *Id.* In fact, permitting jurisdictional discovery has been authorized under similar circumstances by a variety of jurisdictions beyond the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit"). *See United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 637 (1st Cir. 2001); *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C. Cir. 1991); *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir. 1986); *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir. 1983); *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

Here, Righthaven maintains the Court can properly exercise of personal jurisdiction over the Defendants in view of the record before it. This assertion aside, should the Court be inclined to conclude otherwise, Righthaven respectfully requests an opportunity to conduct jurisdictional discovery. This request is made in view of numerous statements contained in Defendants' supporting affidavit (Doc. # 17-1) upon which the Court must consider and in further view of the Motion being presented at the inception of this case. *See Sizova,* 282 F.3d at 1326; *see also Health Grades, Inc.,* 190 Fed.Appx. at 589.

### III.   DEFENDANTS' MOTION MUST BE DENIED.

#### A.   <u>Defendants Are Subject to Specific Personal Jurisdiction.</u>

Defendants' Motion is brought under Rule 12(b)(2), which authorizes dismissal if personal jurisdiction cannot be properly exercised over a party. (Doc. # 16, 17.) Righthaven asserts that specific personal jurisdiction can be exercised over the Defendants. Accordingly, the Motion should be denied.

As a threshold matter, Righthaven is not contending that general personal jurisdiction can be exercised over the Defendants. Rather, Righthaven maintains the Defendants are subject to specific personal jurisdiction. This conclusion is supported by the allegations in the Complaint, which detail the fact that the Work was composed in this forum, was originally published in this forum, and the Defendants should have at least been on notice that the Work came from this

forum given the widespread media coverage associated with Righthaven's copyright enforcement efforts related to it. These allegations, as supplemented by the additional evidence before the Court, are germane to the Court's exercise of specific jurisdiction, not general personal jurisdiction, over the Defendants.  Accordingly, the Court's analysis need not focus on general jurisdictional considerations, as Righthaven is not asserting jurisdiction on this basis.

Specific jurisdiction over a non-resident defendant generally entails someone who "purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Allison,* 621 F.Supp.2d at 1119; *see also Melea, Ltd., v. Jawer SA.,* 511 F.3d 1060, 1066 (10th Cir. 2007).  Foreseeability, *i.e.,* could the defendant reasonably foresee that his conduct could result in litigation in the state in question, is a primary consideration under a specific personal jurisdiction analysis.  *Bell Helicopter Textron, Inc., v, Heliquest, Int'l. Ltd.,* 385 F.3d 1291, 1295-96 (10th Cir. 2004). The Tenth Circuit has established that in order to gain specific jurisdiction, the contacts must be "(a) an intentional action ... that was (b) expressly aimed at the forum state . . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1074-77 (10th Cir. 2008) (quoting *Calder v. Jones,* 465 U.S. 783, 787-88 (1984)). Once the foregoing contacts have been sufficiently established, the final inquiry considers whether the exercise of specific personal jurisdiction would offend traditional notions of fair play and substantial justice.  *Id.* at 1080.

The Tenth Circuit recently adopted the foregoing specific personal jurisdiction analysis standard for general Internet-related torts. *See Shrader,* 633 F.3d at 1240-42. In that case, the panel was faced with determining whether or not personal jurisdiction could be properly exercised over certain defendants accused of disseminating defamatory e-mails and posting unfavorable comments on a website. *Id.* at 1238-39. Thus, the *Shrader* decision did not involve allegations of Internet-based copyright infringement such as those at issue in this case and upon which the Court must analyze Defendants' personal jurisdiction challenge.

In its decision, the Tenth Circuit panel expressly acknowledged that it had "yet to flesh out a comprehensive position in a published opinion dealing with omnipresent internet activity like web sites and posts . . . ." *Shrader,* at 1241.  Despite being an apparent issue of first impression, the Tenth Circuit panel espoused a personal jurisdiction analysis standard based upon the "effects" test set forth in the seminal decision in *Calder v. Jones,* 465 U.S. 783 (1985). *Id.* at 1242. In doing so, the Tenth Circuit panel adopted an "effects" test virtually identical to that employed by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") in cases involving Internet-based torts. *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 803 (9th Cir. 2004); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997); *accord Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010)(containing multiple references to the Ninth Circuit's decision in *Columbia Pictures Television* without once disapproval or overruling its personal jurisdictional analysis).[1]

Specifically, in setting forth the personal jurisdiction analysis standards applicable to general Internet-based tortious conduct, the Tenth Circuit panel, employing a rationale very similar to the Ninth Circuit's application of the "effects" test, reasoned:

> [I]t is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having activity or operation accessible there.

*Shrader,* 633 F.3d at 1240 (emphasis in original).   The Tenth Circuit panel continued its analysis of the unique question before it by acknowledging:

> Consistent with the thrust of the *Calder*-derived analysis for specific jurisdiction in the internet context discussed above, in considering what "more" could create personal jurisdiction for such [Internet-based tortious] activities, courts look to

---

[1]   Righthaven has prevailed over numerous challenges based on the lack of specific personal jurisdiction in other cases under the "effects" test. *See, e.g., Righthaven LLC v. Magerwager.com, Inc.,* 2010 WL 4386499, at *3-5 (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *1 (D. Nev. Sept. 2, 2010).

> indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.

*Id.*

As stated above, the Tenth Circuit panel's decision in *Shrader* was limited to general Internet-related torts. *See Shrader*, 633 F.3d at 1240-42. The decision did not expressly establish a personal jurisdictional analysis standard applicable to Internet-based copyright infringement claims, such as those asserted by Righthaven in the case before this Court.

While the Tenth Circuit has yet to address the issue the issue of personal jurisdiction involving a claim of Internet-based copyright infringement, the Ninth Circuit has done so through the application of two decisions. *See Columbia Pictures Television*, 106 F.3d at 289; *accord Brayton Purcell LLP,* 606 F.3d at 1128. Specifically, the Ninth Circuit has expressly held that willful copyright infringers who reproduce content from a source known to exist in the forum purposefully avail themselves of jurisdiction within said forum. *Columbia Pictures Television,* 106 F.3d at 289. In its decision, the Ninth Circuit panel in *Columbia Pictures Television* expressly held that the *purposeful availment inquiry,* which is tantamount to the "express aiming" requirement under the *Calder* "effects" test, *ends* in copyright infringement cases where the defendant "willfully infringed copyrights owned by [the plaintiff], which, as [the defendant] knew had its principal place of business in the [forum jurisdiction]." *Id*. While the Ninth Circuit panel's decision in *Columbia Pictures Television* is not controlling on this Court's analysis, it should nevertheless be given significant consideration in deciding the issues before it.

Despite the above cited Ninth Circuit decisions in *Columbia Pictures Television* and the decision's subsequent approval in *Brayton Purcell LLP*, the Tenth Circuit is apparently not alone in lacking a case containing the necessary factual circumstances to set forth a personal jurisdiction analysis standard applicable to Internet-based claims of copyright infringement. Recently, the United States Court of Appeals for the Second Circuit certified a question concerning the scope of New York's long-arm statute in a copyright infringement action commenced by a New York book publisher against an Oregon non-profit organization located in

Arizona that operated two websites, one located in Oregon and one located in Arizona, that were allegedly serving as Internet-based conduits for the unauthorized dissemination of he plaintiff's copyrighted books. *See Penguin Group (USA) Inc., v. American Buddha,* 609 F.3d 30, 31-35, 41-42 (2d Cir. 2010); *accord Penguin Group (USA) Inc., v. American Buddha,* 2011 WL 1044581 (Ct. of App. N.Y. Mar. 24, 2011).   Upon review of the certified question presented to it, the Court of Appeals of New York concluded that under its long-arm statute the alleged injury from the Internet-based infringement of copyrighted works occurring outside the forum state resulted in harm to the holder of said rights within the forum state. *Penguin Group (USA) Inc.,* 2011 WL 1044581.   In so holding, the court recognized the unique rights granted under the Copyright Act and "widely recognized" threats posed to copyright owners through acts of digital piracy that could result in unauthorized dissemination of protected works "throughout the country and perhaps the world." *Id.*   In sum, the court's analysis and answer to the certified question before it appears wholly consistent with the analysis employed by the Ninth Circuit as discussed above. *See Columbia Pictures Television*, 106 F.3d at 289; *accord Brayton Purcell LLP,* 606 F.3d at 1128.   This decision, as well as the decisions from the Ninth Circuit, should provide guidance to this Court in adjudicating the Motion before it.

In sum, Righthaven maintains that when the Court properly examines the above-cited authorities in view of the allegations and facts before it, it will properly conclude that specific personal jurisdiction can be exercised over the Defendants.   Upon such a finding, the Defendants' Motion must be denied.

> ### 1. *Defendants are alleged to have committed intentional acts, thereby satisfying the first specific jurisdiction analysis factor.*

The first factor in the Court's specific personal jurisdiction analysis considers whether the Defendants are alleged to have committed any intentional acts. *See Shrader,* 633 F.3d at 1240-42. Righthaven's allegations and the record before satisfy this first specific personal jurisdiction analysis factor.

It is beyond dispute the Defendants are alleged to have committed intentional acts in this case.  Specifically, Righthaven has alleged the Defendants willfully infringed upon copyrighted material.  (Doc. # 1 at 4, 6.)  In so alleging, Righthaven contends the Defendants willfully reproduced the Work without authorization.  (*Id.*)  Moreover, Righthaven has asserted that Defendants' conduct was "purposefully directed at Colorado residents." (*Id.* at 3.)  These allegations, which should be assumed as true for purposes of the Motion given the procedural posture of this case, establish the Defendants' commission of an intentional act.

Moreover, while not controlling authority in this judicial district, a finding that Defendants' alleged act of copyright infringement satisfies the "intentional act" requirement under a specific personal jurisdiction analysis fact would be consistent with several other decisions reached in the district of Nevada involving Internet-based copyright infringement claims asserted against non-resident Righthaven defendants.  *See Magerwager.com, Inc.,* 2010 WL 4386499, at *3-5 (exercising specific personal jurisdiction over Canadian defendants); *Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *1 (denying foreign defendant's personal jurisdiction challenges through the exercise of specific personal jurisdiction); *see also Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011)(Doc. # 28 at 3-6, denying defendants' personal jurisdiction challenges by exercising personal jurisdiction); *Righthaven LLC v. Mostofi,* Case No. 2:10-cv-01066-KJD-GWF (D. Nev. March 22, 2011)(Doc. # 19 at 2-5, finding the exercise of specific personal jurisdiction proper in denying the defendant's personal jurisdiction challenge); *Righthaven LLC v. EMTCity.com,* Case No. 2:10-cv-00854-HDM-PAL (D. Nev. Jan. 24, 2011)(Doc. # 28, denying personal jurisdiction claim by non-resident defendant by finding the exercise of specific personal jurisdiction appropriate); *Righthaven LLC v. Industrial Wind Action Group,* Case No. 2:10-cv-0601-RLH-PAL (D. Nev. Sept. 24, 2010)(Doc. # 16, denying motion for lack of personal jurisdiction brought by non-resident defendant by exercising specific jurisdiction).

Defendants' supporting affidavit (Doc. # 17-1), upon which they rely, do not alter this conclusion.  First, Righthaven is entitled to have uncontested allegations before the Court accepted as true for purposes of adjudicating the Motion. *See Wentz,* 55 F.3d 1505; *Ten Mile Indus. Park,* 810 F.2d at 1524.  Righthaven has alleged that on or about December 1, 2010, Defendants posted, and continued to display, an unauthorized copy of the Work on the Website. (Doc. # 1 at 3; *accord* Ganim Decl. ¶ 5.)  Righthaven has further alleged that Leocha is the administrative and technical contact for Internet domain associated with the Website. (*Id.* at 2; Ganim Decl. ¶ 6.)  Defendants do not contest these factual allegations through their relied upon affidavit.  Rather, Leocha confirms that he owns, operates and is the sole shareholder of Tripso. (Doc. # 17-1 at 2.) Leocha also concedes the Work was displayed on the Website.  (*Id.* at 3; *see also* Ganim Decl. ¶ 5.)  Leocha further fails to assert that the Work appeared on the Website with consent from the *Denver Post*.  (*Id.*; Glines Decl. ¶ 8.)  Moreover, the submitted affidavit does not state if or when the unauthorized copy of the Work was removed from the Website.  (Doc. # 17-1.) Defendants' admissions and omissions, based on at least the submitted affidavit, unquestionably establish a *prima facie* copyright infringement claim. *See Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)(To recover for copyright infringement, the plaintiff must demonstrate: "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant.").  Righthaven submits that given these facts, it has unquestionably satisfied the first specific personal jurisdiction analysis factor.

Despite essentially conceding that Righthaven has established a *prima facie* copyright infringement claim, the Defendants attempt to traverse the Work's unauthorized display on the Website by alleging it was replicated through a website that did not identify its original source or otherwise indicate the forum related to the image.  (Doc. # 17-1 ¶¶ 7-8.)  Defendants' assertions, however, completely ignore that Leocha selected and posted the Work on the Website without any due diligence as to its source by simply relying on content made available from a third party's website. (*Id.* ¶¶ 7-8; Doc. # 1 at 2; Ganim Decl. ¶ 6.)  Thus, this is not a case where

copyright protected content appeared on a defendant's website through subscription to an RSS feed or other service engaged to provide content.

Moreover, Defendants' arguments in this regard completely ignore the extensive media coverage concerning the Work.  For instance, on November 21, 2010, the Work appeared on MSNBC's website, which specifically attributed the locale of the incident photographically captured as having occurred at the Denver International Airport.  (Mangano Decl. Ex. 9.)  On December 9, 2010, the *Las Vegas Sun* reported on Righthaven's copyright enforcement efforts against The Drudge Report over the alleged unauthorized replication of the Work.  (*Id.* Ex. 5.) On December 10, 2010, Forbes Magazine's website featured an article concerning Righthaven's enforcement efforts against The Drudge Report over the unauthorized display of the Work.  (*Id.* Ex. 2.)   Additional examples of media coverage on or about December 10, 2010 that discussed Righthaven's copyright enforcement efforts related to the Work include reports published on such websites as paidContent.org, the Liberty Flame, the Daily Tea Party website, and the United Kingdom entity The Register. (Mangano Decl. Exs. 5, 6-8.)  Media sources either attributed the Work to an event occurring within this forum state (*Id.* Ex. 9) or specifically reported on enforcement efforts related to the Work at a time period that virtually coincides with Defendants' alleged infringement at issue in this case.  While Defendants may contend that despite this extensive media coverage they did not know the Work emanated from this forum, depicted an event occurring within this forum, and was published by a major media source based in this forum that specifically targets readers residing in Colorado, Righthaven has alleged that, at a minimum, Defendants' failure to appreciate these readily available facts constitute willful blindness, which supports the infringement allegations against them even in view of their asserted acquisition of the Work from a third party website. (Doc. # 1 at 3-4; Glines Decl. ¶¶ 3-6; Mangano Decl. Ex. 1.)

In sum, the foregoing discussion of the facts and allegations presented conclusively establish that Defendants engaged in an intentional act under the first specific personal jurisdiction analysis factor.

> **2.      *The second specific personal jurisdiction analysis factor is satisfied because the Defendants' alleged conduct was expressly aimed at the forum state.***

The second specific jurisdiction analysis factor considers whether the Defendants' alleged conduct was expressly aimed at the forum state. *See Shrader,* 633 F.3d at 1240-44. Righthaven's allegations and the record before satisfy this second, "express aiming," specific personal jurisdiction analysis factor.

Righthaven's assertions in this case unquestionably allege that Defendants' conduct was expressly aimed at this forum. The Work at issue in this case undoubtedly emanated from this forum. (Doc. # 1 at 3; Ganim Decl. ¶¶ 3-4; Glines Decl. ¶¶ 3-6.)  The Work photographically captured the pat-down search of a TSA employee in a Denver, Colorado airport. (*Id.*; Ganim Decl. ¶ 3; Glines Decl. ¶ 5.) *The Denver Post* originally published the Work on or about November 18, 2010. (*Id.*; Ganim Decl. ¶ 4; Glines Decl. ¶ 6.) *The Denver Post* reaches more Denver-area adults than any television show, radio program, publication or website, thereby making it Colorado's media leader. (Mangano Decl. ¶ 3, Ex. 1; Glines Decl. ¶ 2.)  Accordingly to publicly disseminated statistics, 1.3 million adults read *The Denver Post* at least once during any given week. (Mangano Decl. ¶ 3, Ex. 1)  In fact, *The Denver Post* "has the largest print, online, mobile and social media audiences in Denver and Colorado and among the top of the nation in terms of newspaper readership and [I]nternet access." (*Id.*)  Given the widespread forum-based readership of *The Denver Post*, it would be wholly consistent for the Court to conclude, as several judges have done in cases involving the alleged infringement of copyrighted material emanating from the *Las Vegas Review-Journal*, that the second analysis prong is "easily satisfied . . ." when the alleged copyrighted material, arose from such a forum-prominent media

source. *See Majorwager.com, Inc.,* 2010 WL 4386499, at *4.  In fact, such circumstances support the conclusion that the forum state itself was the focal point of Defendants' alleged copyright infringement.  *See Shrader,* 633 F.3d at 1244.

Further supporting Righthaven's contentions in this regard are further buttressed by the fact that the Work photographically captures actions within the forum state.  (Doc. # 1 at 3; Ganim Decl. ¶ 3; Glines Decl. ¶ 5.) No other geographic location is associated with the Work. (*Id.*) Righthaven has additionally alleged that the unauthorized copy of the Work has been made available on Defendants' Website to Colorado residents without restriction.  (Doc. # 1 at 3; Ganim Decl. ¶ 5.)  In this regard, Defendants' supporting affidavit fails to provide any sworn statements concerning disputing that the unauthorized replication of the Work was accessible to Colorado residents on the Website.  (Doc. # 17-1.)  Defendants' affidavit is also fails to address whether Colorado residents in fact accessed the infringing replication of the Work posted on the Website or if firewall or other means of restricting Website access by Colorado-related Internet Protocol addresses were employed to limit block accessibility.  (*See id.*)  Accordingly, these unanswered questions must be viewed in Righthaven's favor given the Complaint's allegations and the Defendants' failure to directly contest their obvious application to this Court's specific personal jurisdiction analysis given the procedural timing of the Motion. *See Wentz,* 55 F.3d 1505; *Ten Mile Indus. Park,* 810 F.2d at 1524.

With these facts and circumstances in mind, Defendants ask the Court to conclude that they did not expressly aim any alleged infringing activity at the forum state.  (Doc. # 17 at 15-16.)  In doing so, the Defendants admit the Work appeared on the Website over which Leocha maintains all administrative, technical and, necessarily, editorial control. (Doc. # 17-1 at 2; Doc. # 1 at 2; Ganim Decl. ¶ 6.)  Moreover, Defendants apparently concede that they did not obtain *The Denver Post's* consent prior to displaying the Work based on their assertion that the infringing copy was obtained from another website.  (Doc. # 17-1 ¶¶ 7-8; *see also* Glines Decl. ¶ 8.)

Rather, Defendants rely on a personal jurisdiction defense that directs culpability to a third party source as justification for their unauthorized replication of the Work. (Doc. # 17-1 ¶¶ 7-8.)  While these assertions may support a claim for indemnification based on their belief that the material derived from this other source was legitimately obtained or that they were free to disseminate the Work on the Website, these indemnification rights do not mitigate the Defendants' potential liability in this action or otherwise alter the Court's jurisdictional analysis.

More fundamentally, however, Defendants' contentions ignore the widespread media coverage concerning Righthaven's enforcement of unauthorized replications of the Work that was originally published by *The Denver Post*.  (Mangano Decl. Exs. 2-9.)   Moreover, to the extent Defendants contend they had no idea the Work was related to this forum is contrary to its pre-infringement display on MSNBC's website on November 21, 2010 wherein the incident photographically captured was specifically referenced as having occurred at the Denver International Airport.  (*Id.* Ex. 9.) Again, while Defendants may steadfastly maintain their lack of knowledge about the Work's relationship to this forum, Righthaven has expressly alleged that they committed copyright infringement through their willful blindness given these circumstances.  (Doc. # 1 at 4.)  Defendants' affidavit fails to contradict Righthaven's assertions about their alleged willful blindness.  (Doc. # 17-1.)

Simply put, Righthaven's allegations and the record presented to the Court demonstrate that Defendants' conduct was expressly aimed at this forum.  The record before the Court includes uncontested allegations contained in Righthaven's Complaint, including the assertion that Defendants engaged in willful blindness in posting the unauthorized copy of the Work on the Website. (Doc. # 1 at 4.)  This assertion is clearly supported by the sampling of media coverage submitted by Righthaven, which is by no means exhaustive.  (Mangano Decl. Exs. 2-9.)  These uncontested allegations, admitted facts, circumstances, and conflicting evidentiary views must be construed in favor of Righthaven's assertion that the second specific personal jurisdiction factor has been established.  *See Wentz,* 55 F.3d 1505; *Ten Mile Indus. Park,* 810

F.2d at 1524; *see also National Med. Servs.,* 974 F.2d 143, 145 (10th Cir. 1992). Even if Righthaven were not afforded this benefit, the record before the Court still demonstrates that the second specific personal jurisdiction analysis factor is satisfied.

> ### 3.     The brunt of the injury is felt in the forum state, thereby satisfying the third specific personal jurisdiction analysis factor.

The third factor in the Court's specific personal jurisdiction analysis considers whether the brunt of the injury caused by the Defendants has been felt within the forum state. *See Shrader,* 633 F.3d at 1240-42.  Once again, Righthaven's allegations and the record before satisfy the requirements of this third specific personal jurisdiction analysis factor.

As argued above, *The Denver Post* composed the Work, which involved an incident at an airport in the State of Colorado.  (Doc. # 1 at 3; Ganim Decl. ¶ 3; Glines Decl. ¶¶ 3-5.) On or about November 18, 2010, *The Denver Post* published the Work and in doing so made it accessible to numerous Denver, Colorado residents, as well as to people living throughout the State of Colorado via the company's website. (Ganim Decl. ¶ 4; Mangano Decl. ¶ 3, Ex. 1; Doc. # 1 at 3; Glines Decl. ¶¶ 6-7.)  *The Denver Post* is "Colorado's media leader, reaching more Denver-area adults than any television show, radio program, publication or web site."  (Mangano Decl. ¶ 3, Ex. 1; Glines Decl. ¶ 2.)  In fact, the only geographic location associated with the Work is Denver, Colorado.  (Doc. # 1 at 3; Glines Decl. ¶ 5.)

These circumstances, coupled with the Defendants' alleged unauthorized replication of the Work, undoubtedly caused harm to *The Denver Post*.  (Glines Decl. ¶ 10.)  Simply put, the Defendants' alleged acts of copyright infringement occurred after one of the largest forum-based media news entities published the Work.  The Work's content photographically captures events occurring within this forum at a forum-based airport.  All of these facts establish that the brunt of the injury arising from Defendants' alleged infringement of the Work has occurred "primarily or particularly in the forum state."  *See Shrader,* 633 F.3d at 1241. Accordingly, the allegations and

factual record before the Court clearly demonstrate that Righthaven has satisfied the third specific personal jurisdiction inquiry factor.

### 4. *The exercise of specific personal jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice.*

The final inquiry under the Court's analysis is whether the exercise of specific personal jurisdiction over the Defendants would offend traditional notions of fair play and substantial justice. *See Shrader,* 633 F.3d at 1240.  At this point, however, it is incumbent on the Defendants "to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing *Dudnikov,* 514 F.3d at 1080).  Defendants cannot, and have not, made such a showing in this case.  Accordingly, the exercise of specific personal jurisdiction would not offend traditional notions of fair play and substantial justice.

Assuming, *arguendo,* the Court finds that Defendants' arguments made in support of their contention that exercising specific personal jurisdiction would offend traditional notions of fair play and substantial justice somehow "amount to a compelling case" of unreasonableness, Righthaven argues otherwise.  First, Defendants argue that the forum state has absolutely no interest in adjudicating this dispute because it is between two non-resident parties.  (Doc. # 17 at 18.)  Defendants are wrong for several reasons.  To begin with, the State of Colorado has a fairly obvious interest in protecting the misappropriation of news media content concerning activity within the jurisdiction and published by a news media source deemed to be "Colorado's media leader . . . ." (Mangano Decl. Ex. 1; Glines Decl. ¶¶ 2-7.)  The fact that out-of-state defendants stole such content does not mitigate this interest.  Moreover, the source publication, which is based in Denver, Colorado, along with its parent company, while not parties to this action, certainly were the victims of the Defendant's infringement. (Ganim Decl. ¶¶ 3-4; Glines Decl. ¶¶ 2-7, 10.)

Defendants next argue that maintaining this action in the forum state would offend traditional notions of fair play and substantial justice because "all evidence related to Plaintiff's purported claim are located in Massachusetts . . . ." (Doc. # 17 at 19.)  Defendants' argument in this regard fails to acknowledge that significant evidence related to this action is located in this forum.  First, the Work emanated from the State of Colorado. (Doc. # 1 at 3; Ganim Decl. ¶¶ 3-4; Glines Decl. ¶¶ 3-5.) *The Denver Post* originally published the Work in this jurisdiction.  (*Id.*; Ganim Decl. ¶ 4; Glines Decl. ¶ 6.)  *The Denver Post* and/or MediaNews Group assigned the Work to Righthaven after the Defendants' infringement occurred.  (Ganim Decl. ¶ 7; Glines Decl. ¶¶ 6, 9.)  As such, it is without question that these facts demonstrate that witnesses and/or documents related to this dispute are located in the State of Colorado.  Accordingly, contrary to Defendants' assertions, all evidence is not located far away in Massachusetts.  Rather, substantial evidence and associated percipient witnesses are unquestionably located with this forum.

Simply put, adopting Defendants' myopic view of the forum state's interest in asserting jurisdiction over this dispute would be nothing short of a travesty.  Righthaven has clearly demonstrated that the exercise of specific personal jurisdiction over the Defendant would not offend traditional notions of fair play and substantial justice.  As discussed above, Righthaven has also satisfied the other factors required to properly exercise specific personal jurisdiction over the Defendants.  Accordingly, the Defendants' Motion should be denied.

## B.   Alternatively, The Factual Allegations And Evidence Presented Warrants Jurisdictional Discovery if The Court is Inclined to Grant The Motion.

The allegations contained in Righthaven's Complaint, coupled with the other evidence before the Court, justify the exercise of specific personal jurisdiction over the Defendants.  If, however, the Court is inclined to rule that a *prima facie* basis for the exercising of specific personal jurisdiction over the Defendants has not been demonstrated, Righthaven respectfully requests an opportunity to conduct jurisdictional discovery.

As noted above, given the factually intensive nature of a personal jurisdiction analysis, "either party should be allowed discovery on the factual issues raised . . . " by a Rule 12(b)(2) motion to dismiss. *Sizova,* 282 F.3d at 1326 (internal quotation omitted); *accord Health Grades, Inc.,* 190 Fed.Appx. at 589. While the district court is granted broad discretion in determining the propriety of jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either pertinent facts are controverted or if a more satisfactory showing of the facts is necessary. *Id.*

Here, Righthaven's Complaint alleges ample and non-conclusory facts upon which the exercise of specific personal jurisdiction could properly be found to exist. Righthaven, however, has further supplemented these allegations with the declaration of its in-house counsel, Steven G. Ganim, and the declaration of Sara Glines, who serves as the Vice President of Field Operations for MediaNews Group. (Glines Decl. ¶ 1.) Mr. Ganim's statements, which are derived from his employment with the company, and Ms. Glines statements, which are derived from her position with MediaNews Group – the parent company of *The Denver Post*, further support Righthaven's copyright infringement allegations against the Defendants and also justify the propriety of exercising specific personal jurisdiction over them. Furthermore, evidence relating to the extensive media coverage about Righthaven's copyright enforcement efforts, which were published in very close temporal proximity to the Defendants' alleged infringement, supports Righthaven's claim of willful blindness and/or contradict any claims the Defendants were unaware of the Work's relationship to the State of Colorado. (Mangano Decl. Exs. 2-9.) Righthaven also maintains that its personal jurisdiction arguments are strengthened by the admissions and omissions contained in the affidavit upon which Defendants exclusively rely. (Doc. # 17-1.)

These observations aside, if the Court considers Defendants' relied upon affidavit and their related arguments as being determinative of its personal jurisdiction analysis, Righthaven must be entitled to engage in jurisdictional discovery as these issues. (Mangano Decl. ¶¶ 12-13.)

Such discovery would at a minimum encompass conducting Leocha's deposition, conducting the deposition of one or more non-parties affiliated with the website from which Defendants claim to have acquired the Work, and document requests that seek production of all contracts, manuals and or other material that support these allegations. (Mangano Decl. ¶ 13.)  Righthaven is hopeful that such discovery efforts are not required given the record before the Court, which supports the exercise of specific personal jurisdiction over the Defendants.

IV.     CONCLUSION.

        For the foregoing reasons, Righthaven respectfully requests the Court deny the Defendants' Motion along with granting such other relief as is deemed appropriate.  To the extent the Court is inclined to rule otherwise, Righthaven respectfully requests the Court permit jurisdictional discovery given the procedural timing of Defendants' Motion and in view of the factual assertions presented through the submitted affidavit (Doc. # 17-1) given the absence of discovery in this case.

        Dated this 16th day of May, 2011.

                                        By: /s/ Shawn A. Mangano
                                        SHAWN A. MANGANO, ESQ.
                                        SHAWN A. MANGANO, LTD.
                                        9960 West Cheyenne Avenue, Suite 170
                                        Las Vegas, Nevada  89129-7701

                                        STEVEN G. GANIM, ESQ.
                                        RIGHTHAVEN LLC
                                        9960 West Cheyenne Avenue, Suite 210
                                        Las Vegas, Nevada 89129-7701

                                        *Attorneys for Plaintiff Righthaven LLC*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 16th day of May, 2011, I caused a copy of the **PLAINTIFF RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH CERTIFICATE OF SERVICE** to be to be served by the Court's CM/ECF system.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas. Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851
shawn@manganolaw.com